# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA CONWAY, | : |
| Plaintiff | : CIVIL ACTION NO. 3:15-2496 |
| v. | : (JUDGE MANNION) |
| CELTIC HEALTHCARE OF NEPA, INC.[1], and KIM KRANZ, | : |
| Defendants | : |
| | : |

## MEMORANDUM

Pending before the court is the defendants' motion for summary judgment. (Doc. 45). Based upon the court's review of the record, the defendants' motion will be granted.

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury

---

[1]The defendant has provided that it was incorrectly named as "Celtic Healthcare of Carlisle, Inc., t/d/b/a Celtic Healthcare". The plaintiff has not challenged the proper identification of the defendant. Therefore, the Clerk of Court has been directed to correct the docket in this action to reflect the proper identification of the defendant.

could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny,

2

139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

The undisputed facts of record in this case establish that Celtic's predecessor, Hospice Community Care ("HCC") hired the plaintiff in May 2008.[2] During her employment, the plaintiff took leave under the Family and Medical Leave Act ("FMLA") for mental health issues. In 2012, the plaintiff's employment with Celtic was terminated due to a reduction in force. The plaintiff was invited to reapply to any open positions following her 2012 layoff. The plaintiff does not claim that the 2012 layoff was discriminatory or retaliatory, despite having taken FMLA leave for her mental health issues prior to that layoff.

The plaintiff reapplied and was rehired by Celtic in May 2012 to work as

---

[2]The court notes that there are a number of contentions made in the plaintiff's responsive and counter statements of material facts which either do not have a citation to the record or are not supported by the record which has been cited. Counsel should be careful to ensure that all statements of fact are accurate and supported by the record cited.

a Bereavement Coordinator in its hospice. As a Bereavement Coordinator, the plaintiff was responsible for working with family members who lost, or were in the process of losing, a loved one. The plaintiff oversaw group bereavement sessions for adults and children, and also visited grieving families, attended funerals, and provided in-person assistance. Interacting with clients, including grieving families, is an essential duty of the Bereavement Coordinator position.

The plaintiff suffers from major depressive disorder, anxiety and obsessive compulsive disorder. The plaintiff testified that, at certain times, her depressive disorder made her unable to perform the functions of her job as a Bereavement Coordinator, which is why she went out on FMLA.[3] While employed for Celtic, the plaintiff took FMLA leave in 2011, 2012 and January 2014. Celtic granted the plaintiff all of the FMLA leave that she requested and did not take any steps to terminate the plaintiff when she took this leave.

Defendant Kranz started her employment with Celtic as its Director of Hospice and then became the Vice President for Hospice and Palliative Care in January 2014. At that time, defendant Kranz became aware that the plaintiff was going out on FMLA leave because she "needed help." Ms. Kranz was not informed that the plaintiff had a psychiatric problem and testified that she

---

[3]The plaintiff denies this fact as stated. However, the testimony speaks for itself.

4

"wasn't sure" whether the fact that the plaintiff "needed help" meant that she had psychiatric problems. Defendant Kranz subsequently began supervising the plaintiff in May 2014. Although there were other Bereavement Coordinators, the plaintiff was the only one who reported to defendant Kranz.

On May 19, 2014, the plaintiff requested FMLA leave from May 27, 2014 to June 2, 2014 for an in-patient hospitalization. The request was initially made to defendant Kranz. The plaintiff did not inform defendant Kranz of the reason for the FMLA leave. Defendant Kranz advised the plaintiff to follow up with Human Resources. Defendant Kranz testified that she does "not recall" whether she told anybody else that the plaintiff needed FMLA leave, but did discuss with Audrey Miller, Kelly McAndrew and Marty Carr that the plaintiff would be out and that they were to cover for her while she was out. Each of these individuals provided bereavement support. The plaintiff subsequently followed up with Jared Menghini, a human resources employee of Celtic, regarding her FMLA leave. The plaintiff's FMLA request was granted with defendant Kranz never having to look at or approve the FMLA leave paperwork.

Although the plaintiff's FMLA leave officially ended on June 2, 2014, the plaintiff testified that she did not get out of the hospital until June 5, 2014. Defendant Kranz testified that she did not make an effort to contact the plaintiff's medical providers to see when she would be returning from FMLA

5

leave and does not know if anyone from Celtic did so. The plaintiff testified that she did not call defendant Kranz to extend her leave on June 5, 2014 because, upon her release from the hospital, she was informed that she had two deaths in her family. The plaintiff testified that she called defendant Kranz on Friday, June 6, 2014, to advise that she would be returning to work the following Monday.[4]

The plaintiff had two bereavement counseling appointments scheduled to take place during the time she was off on FMLA leave.[5] Although defendant Kranz testified that she was uncertain as to whether there was a company policy dictating that an employee could not schedule an appointment in a manner other than through the company's scheduling system software, known as "CPA", she testified that employees were educated that the best practice was to enter appointments into the CPA, so that others know what is

---

[4]The defendants' answer provides that the plaintiff called on June 5, 2014, to advise that she would not be returning to work until the following week.

[5]The plaintiff denies this fact citing to her deposition testimony at page 44. However, this portion of the plaintiff's deposition testimony is not in the record before the court. In the deposition testimony cited by the defendant in support of this fact, the plaintiff admits that a meeting took place relating to disciplinary action against the plaintiff having to do with "two scheduled appointments where the individuals showed up seeking bereavement counseling and said that they had scheduled appointments with [the plaintiff]" and the plaintiff never advised anyone that those individuals would be coming in and seeking bereavement counseling. (Doc. 48, Ex. 1, p. 53).

scheduled if something unexpected occurs. Moreover, the defendant's Rule 30(b)(6) designee, Debra Vargulish, testified that, although there is no written policy which provides that any employee must insure that somebody can cover their position if they are out on leave, as part of their general work duties, it is an employee's responsibility to make sure that their work is covered or notify someone that there is a need for coverage. The plaintiff admittedly never advised anyone at Celtic that the two families would be coming in for bereavement counseling. Defendant Kranz testified that she did not recall whether she asked the plaintiff if she had anybody scheduled for the week that she was scheduled to be out on FMLA leave. She further testified that other employees could have covered the plaintiff's appointments, if the plaintiff had notified them of the appointments, but she did not.

Following a team meeting on June 18, 2014, the plaintiff advised defendant Kranz that she had two deaths in her family. The plaintiff testified that defendant Kranz did not offer her any time off upon learning of the deaths. Defendant Kranz testified that the plaintiff did not request any time off. Celtic's Rule 30(b)(6) designee testified that bereavement leave is available and considered an excused absence for employees, if the deceased is a family member.

Later that day, the plaintiff received an e-mail stating that she had a meeting with defendant Kranz at 12:30. Defendant Kranz and Jared Menghini

7

met with the plaintiff at that time and issued her a written warning, which was placed in the plaintiff's employee file. Defendant Kranz went over the warning with the plaintiff and indicated that her failure to reschedule the two bereavement appointments, or to arrange to have another counselor cover them, was unprofessional. Ms. Kranz also informed the plaintiff that it was unprofessional to step out of important meetings to take phone calls, as she had done earlier that day. The plaintiff admitted that, when she stepped out of the meeting at issue, she missed important information and that she never followed up with anyone to find out what she missed while she was out of the room. The plaintiff further testified, however, that she "got the gist" of what she needed to know.

Prior to the plaintiff's written warning, in March 2014, Celtic decided to eliminate certain positions in an effort to align the workforce with Celtic's fiscal status. At the time of the layoff, there were two Volunteer Coordinators and one Bereavement Coordinator.[6] Ultimately, on July 23, 2014, the plaintiff's employment was terminated, her position was eliminated, and it has not been re-established. The duties of the Bereavement Coordinator were transferred and combined with the duties of the Volunteer Coordinators, creating a Volunteer/Coordinator position, who was capable of providing both

---

[6]Although the plaintiff denies this statement, there is nothing in the testimony cited by the plaintiff which contradicts the statement.

bereavement and counseling services.[7] Defendant Kranz was involved in, and ultimately made the decision, as to who was going to be laid off as part of the reduction in force. Including the plaintiff's position, thirteen positions were eliminated as part of the reduction in force. The plaintiff was the only Bereavement Coordinator included in the reduction in force. In her termination letter, the plaintiff was invited to reapply for positions as they became available; however, the plaintiff never reapplied for any available positions.

The plaintiff's testimony reflects that she never complained to anyone at Celtic about alleged disability discrimination or retaliation, nor did she complain about interference or retaliation. Moreover, the plaintiff never complained to anyone at Celtic about Ms. Kranz. In fact, the plaintiff never lodged any complaint of any kind during her employment with Celtic.

On June 26 and July 1, 2014, the plaintiff filed identical EEOC charges alleging disability discrimination as to her June 18, 2014 written warning only. On her charge form, the plaintiff did not check the box for "Retaliation". The plaintiff's EEOC charge does not reference the plaintiff's termination or allege

---

[7]The plaintiff denies this statement responding that she was included in the layoff because of her FMLA activity. However, nothing in the plaintiff's statement refutes defendant Kranz's testimony that the duties of the Bereavement Coordinator were combined with those of the Volunteer Coordinators.

9

any discrimination as to the termination decision.[8]

The plaintiff testified that she believes that other employees were treated better than she was treated because she is disabled and requested FMLA leave. However, the plaintiff does not know whether any other employees have disabilities or whether they ever took FMLA leave. The plaintiff's comparators had different job titles and performed job duties different from the plaintiff. Moreover, the plaintiff testified that she has no facts to support her contention that Ms. Kranz treated other employees differently than she treated the plaintiff, or that anyone at Celtic treated any other employees different than they treated her. None of the thirteen other individuals impacted by the reduction in force were on medical leave when they were terminated.

Following her termination from Celtic, the plaintiff was employed by the Scranton Counseling Center for three months in 2015. The plaintiff left that position because of her disability. The plaintiff is not currently looking for employment because she is unable to work due to memory problems. In fact, the plaintiff has filed for Social Security Disability benefits, claiming that she is totally disabled and unable to work in any capacity.

---

[8]The plaintiff denies this statement indicating that she stated that she believed that she was retaliated against because she had to be treated in the hospital. However, nowhere in her charge does she reference her termination, only the written warning given to her on June 18, 2014.

The plaintiff filed the instant action, and later amended her complaint, in which she alleges claims of disability discrimination and retaliation under the Americans with Disabilities Act ("ADA") and Pennsylvania Human Relations Act ("PHRA").[9] In addition, the plaintiff asserts claims of interference and retaliation under the Families and Medical Leave Act ("FMLA").

As to the plaintiff's claims, the defendants first argue that the plaintiff's termination claims under the ADA and PHRA fail because she never filed an administrative charge challenging her termination and, therefore, failed to exhaust her administrative remedies. The ADA adopted the enforcement scheme and remedies of Title VII, including the requirement that the plaintiff exhaust her administrative remedies. 42 U.S.C. §12117(a); Williams v. E. Orange Cmty. Charter Sch., 395 Fed. App'x 895, 897 (3d Cir. 2010). The plaintiff must also exhaust her administrative remedies under the PHRA before she may file suit in federal court. 43 Pa.Cons.Stat. §995(a); Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 475-76 (3d Cir. 2001).

The purpose of exhaustion is to "put the EEOC on notice of the plaintiff's claims and afford it the opportunity to settle disputes through

---

[9]The plaintiff's ADA and PHRA claims are evaluated using the same legal standards. See e.g., Diaz v. Saucon Valley Manor, Inc., 579 Fed.App'x 104, 105 (3d Cir. 2014); Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002).

11

conference, conciliation, and persuasion, avoiding unnecessary action in court." Webb v. City of Philadelphia, 562 F.3d 256, 262 (3d Cir. 2009) (internal citations omitted). "[T]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . ." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976). As such, the district court action is limited to claims that are within the scope of the original administrative charge. Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996). In determining what claims are properly before the court, the court considers whether "there is a close nexus between the facts supporting each claim or whether additional charges made in the judicial complaint may fairly be considered explanations of the original charge or growing out of it." Janis v. La-Z-Boy Furniture Galleries, 2006 WL 724157, *5 (E.D.Pa. March 17, 2006) (citation omitted). In this regard, the scope of the EEOC charge is liberally construed. Hicks v. ABT Assocs., Inc., 572 F.2d 960, 965 (3d Cir. 1978).

When determining whether a plaintiff has exhausted administrative remedies, there is a need to identify the specific employment practice that allegedly constitutes an act of discrimination. Ledbetter v. Goodyear Tire & Rubber Co., Inc., 550 U.S. 618, 624 (2007). An "employment practice" refers to "a discrete act or single 'occurrence'" that takes place at a particular point in time. Id. at 628. A new violation occurs when each act is committed and an

employee must file a timely EEOC charge as to each discrete alleged violation. Id. The Supreme Court has provided that examples of "discrete acts" include termination, failure to promote, denial of transfer, and refusal to hire. Id. Other courts have found that written warnings or reprimands constitute discrete acts. See e.g., Mems v. City of St. Paul, Dep't of Fire and Safety Servs., 327 F.3d 771, 785 (8th Cir. 2003) (an employee reprimand constitutes a discrete act and is a distinct employment practice); Briggs v. New York State Dept. of Transp., 233 F.Supp.2d 367, 374 (N.D.N.Y. 2002) (a letter of warning is a discrete act).

In this case, on June 26, 2014 and July 1, 2014, the plaintiff filed identical EEOC charges alleging disability discrimination and retaliation based only upon the written warning she received, and not upon her termination. In fact, the record reflects that the plaintiff had not been terminated until July 23, 2014, after the filing of the EEOC charge. The court finds that the plaintiff's termination was a discrete act and, once the plaintiff was terminated, she should have filed an EEOC charge with respect to her termination in order to exhaust her administrative remedies as to that act. The plaintiff did not do so and, as such, the court finds that she has not exhausted her administrative remedies as to her termination claims. The defendants' motion for summary judgment will be granted as to the plaintiff's ADA and PHRA claims based upon her termination.

As to the written warning which was challenged in the EEOC charge, the defendants argue that the plaintiff's ADA and PHRA discrimination and retaliation claims fail because the plaintiff has not established a prima facie case of discrimination or retaliation. In order to establish a prima facie case of discrimination under the ADA, the plaintiff must prove that: (1) she is "disabled" within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an adverse employment action as a result of discrimination. Gaul v. Lucent Tech., 134 F.3d 576, 580 (3d Cir. 1998) (citation omitted). Further, in order to establish a prima facie case of retaliation under the ADA, the plaintiff must show: (1) she engaged in protected activity; (2) she suffered adverse action by her employer either after or contemporaneous with her protected activity; and (3) a causal connection between her protected activity and her employer's adverse action. Strausser v. Gertrude Hawk Chocolate, Inc., 2018 WL 1470796, at *6 (M.D. Pa. Mar. 26, 2018) (citing Gera v. County of Schuylkill, 617 Fed. App'x 144, 147 (3d Cir. 2015); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)).

Here, among other things, the defendants argue that the plaintiff's written warning did not constitute an adverse employment action for purposes of her ADA and PHRA claims. In Mieczkowski v. York City School District, 414

Fed. App'x 441, 446-47 (3d Cir. 2011), the Third Circuit specifically recognized that written letters of reprimand that "do not effect a material change in the terms or conditions" of one's employment cannot constitute adverse employment actions. Id. at 447 (citing Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001) (internal quotations omitted). The court, therefore, agrees that the defendants' issuance of a written warning is insufficient to constitute an adverse employment action for purposes of the plaintiff's ADA and PHRA discrimination and retaliation claims, and the defendants' motion for summary judgment will be granted on this basis.[10]

As to the plaintiff's retaliation claim under the FMLA, where there is only indirect evidence of a violation of the FMLA, as in this case, the Third Circuit has stated that the McDonnell Douglas burden-shifting framework applies to retaliation claims. Coppa v. Am. Soc'y for Testing Materials, 2005 WL 1124180 (E.D.Pa. May 11, 2005). To state a prima facie case of FMLA retaliation, a plaintiff must "show that (1) [s]he took an FMLA leave, (2) [s]he suffered an adverse employment decision[11], and (3) the adverse decision was

---

[10] In light of the court's finding that the plaintiff has failed to establish a prima facie case of discrimination under the ADA and PHRA, the court declines to address the alternate bases for the defendants' motion for summary judgment with respect to these claims.

[11] What constitutes an adverse employment decision under the ADA and PHRA differs from what constitutes an adverse employment decision under the FMLA.

causally related to [her] leave." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004) (footnote omitted). If the plaintiff establishes a prima facie case of retaliation, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Baltuskonis v. U.S. Airways, Inc., 60 F.Supp.2d 445, 448 (E.D.Pa. 1999). If the employer meets this relatively light burden of production, the plaintiff must present evidence that the employer's proffered reason for the adverse action was a pretext for retaliating against the employee for taking FMLA leave. Id. The plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764-65 (3d Cir. 1994).

Here, even assuming that the plaintiff has established a prima facie case of retaliation under the FMLA, the defendant has provided legitimate, non-discriminatory reasons for providing the plaintiff a written warning and for her later termination. To this extent, the defendant has provided that the plaintiff was given a written warning because she failed to place on the central calendar, or notify anyone at Celtic, that she had clients scheduled to come for bereavement counseling when she was going to be out on leave. Because

16

no one was notified or aware of the appointments, the families presented for bereavement counseling and nobody was there to receive them. Further, the defendants have provided that the plaintiff was terminated, not because of her use of FMLA leave, but as the result of a reduction in the work force. In this regard, the plaintiff's position as a bereavement counselor was eliminated and never re-established. The plaintiff has presented no evidence from which a factfinder could reasonably either disbelieve the reasons set forth by the defendants or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the defendant's actions. In light of this, the defendants will be granted summary judgment as to the plaintiff's FMLA retaliation claim.

The defendants further argue that the plaintiff's FMLA interference claim fails. To state a claim for interference under the FMLA, a plaintiff must establish: "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." Thornton v. Temple Univ. Health Sys., Inc., 2018 WL 585488, at *2 (E.D. Pa. Jan. 29, 2018) (quoting Ross v. Gilhuly, 755 F.3d 185, 191 (3d Cir. 2014)).

Here, the defendants argue that the plaintiff's interference claim fails

because she was granted all of the FMLA leave which she requested. In fact, the plaintiff testified that the defendant never denied her any FMLA leave time. The Third Circuit has affirmed judgments on interference claims against plaintiffs who actually received the FMLA benefits to which they were entitled. See Ross, 755 F.3d at 192 (affirming grant of summary judgment against the employee because he "received all of the benefits to which he was entitled by taking leave and then being reinstated to the same position from which he left."); accord Capps v. Mondelez Glob., LLC, 847 F.3d 144, 156 (3d Cir. 2017) ("[W]e have made it plain that, for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld."). Because the plaintiff has received all of the benefits to which she was entitled under the FMLA and has not established that her FMLA benefits were actually withheld, the defendants are entitled to summary judgment as to the plaintiff's FMLA interference claim.

Finally, the defendants argue that the claim against defendant Kranz as an aider and abettor under the PHRA fails because there is no evidence of discrimination or retaliation for defendant Kranz to have aided and abetted. The court agrees. An individual can not be held liable for aiding and abetting non-existent discrimination or retaliation. See Smith v. Univ. of Scranton, 2018 WL 3361060, at *6 (M.D. Pa. July 10, 2018) (citing Carroll v. Comprehensive Women's Health Servs., 2017 WL 4284386, at *6 n.4 (M.D. Pa. Sep. 27,

2017)).

Based upon the foregoing, the defendants are entitled to summary judgment as a matter of law as to all of the claims set forth by the plaintiff in her amended complaint. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: August 6, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-2496-01.wpd